UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEROY NOAH, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:06CV591 CDP |
| | ) | |
| SAINT LOUIS COUNTY, MISSOURI, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Leroy Noah and Christopher Davis bring this civil action against

police officers August Mercurio and Robert Dean, and their employer, St. Louis

County.  Plaintiffs sue all three defendants under 42 U.S.C. § 1983, and they bring

claims of assault and battery against the police officer defendants.  Defendant St.

Louis County seeks summary judgment on the sole claim pending against it,

arguing that Plaintiffs cannot recover under any of the three theories of municipal

liability that they assert.  Plaintiffs respond that a genuine issue of material fact

exists and that the County has not shown otherwise.  Because I find that Plaintiffs

have not presented sufficient evidence to support any theory of municipal liability

against St. Louis County, I will grant the County's motion for summary judgment.

## I.    <u>Background</u>[1]

Plaintiffs Leroy Noah and Christopher Davis allege that defendant police

officers Mercurio and Dean used excessive force in the process of arresting them

on January 28, 2005.  The police were summoned to Noah's home after receiving

a report from dispatch of a "flourishing in progress."  Repossession men had

called police to report that a man in the home was flourishing a weapon at them

when they came to try to recover a vehicle.  Noah alleges that after he let the

police in through the sliding glass door on his back porch,  Officer Dean threw

him to the floor, handcuffed him, stepped on him and kicked him.  Davis, who was

sleeping at Noah's house, came downstairs when he heard the commotion.  He

alleges that Officer Mercurio grabbed him, dragged him out of the house, threw

him to the ground and handcuffed him.  After he was handcuffed, Davis alleges

that he was kicked and stepped on.  Both Plaintiffs state that they offered no

resistance in the process of being handcuffed.  They both assert that chiropractic

treatment was required for the injuries they sustained as a result of the incident.

Noah was booked and charged on 'Flourishing,' and Davis was released without a

---

[1] Plaintiffs filed a 'Statement of Material Facts in Which a Genuine Issue Exists' but they never responded to St. Louis County's Statement of Uncontroverted Facts.  Under Local Rule 4.01, all matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.  Despite plaintiffs' failure to comply with the rule, I have considered all the evidence submitted by both sides.

citation. A videotape was made of part of the incident. Mercurio and Dean did not file summary judgment motions, and the parties agree that factual disputes exist with regard to plaintiffs' claims against them.

Defendants Mercurio and Dean are employed by St. Louis County as police officers and were employed in that capacity on the date of the incident alleged in the Plaintiffs' complaint. The St. Louis County Police Board, established by County Charter, oversees the operation of the St. Louis County Police Department. The Board is vested with authority to establish the policies of the St. Louis County Police Department and it is the final policymaker for the Police Department. The Board establishes policies that govern the operation and conduct of the Police Department, and the rules and regulations for the qualifications, training, conduct, and discipline of St. Louis County police officers.

Citizen complaints alleging misconduct by County police officers are investigated through the Bureau of Professional Responsibility ("BPR"). After an investigation is completed, the complaint is classified as either: (1) exonerating an officer; (2) an unfounded complaint; (3) not sustaining the complaint; or (4) sustaining the complaint. If a complaint is found to be sustained, the police officer is disciplined.

In Count II of their complaint, Plaintiffs allege that St. Louis County

violated their civil rights under 42 U.S.C. § 1983. They allege three alternative

theories of municipal liability: (1) that the County delegated authority to Mercurio

and Dean to make policy and their misconduct was so pervasive as to constitute a

custom and usage with the force of law; (2) that the County failed to properly hire,

train, supervise, control, and discipline Mercurio and Dean, resulting in deliberate

indifference towards the Plaintiffs; and (3) that the County knew or should have

known that the acts of Mercurio and Dean were part of a pattern of transgressions

which the County failed to investigate and act on based on prior complaints

against the officers.

## II.    Discussion

### A.    Legal Standards on Summary Judgment

The standards for summary judgment are well settled. In determining

whether summary judgment should issue, the Court views the facts and inferences

from the facts in the light most favorable to the nonmoving party. Matsushita

Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The

moving party has the burden to establish both the absence of a genuine issue of

material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met this burden,

the nonmoving party may not rest on the allegations in its pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). At the summary judgment stage, I will not weigh the evidence and decide the truth of the matter, but rather I need only determine if there is a genuine issue for trial. Anderson, 477 U.S. at 249.

## B. Theory 1: Delegation of Authority

A plaintiff may establish municipal liability under § 1983 by proving a violation of constitutional rights resulting from an official municipal policy, or a plaintiff may show misconduct so pervasive among non-policymaking employees of the municipality that it constitutes a "custom or usage" with the force of law. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). Here, Plaintiffs allege that the act of kneeing a prone suspect in the back or neck while handcuffing the suspect demonstrates the "existence of a widespread act that is so permanent and well settled as it constitutes a custom or usage with the force of law, although the act is not authorized by written law or express written policy."

In order to demonstrate a "custom or usage" necessary for municipal liability, a plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

(3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

Jane Doe A v. Special School Dist. of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiffs here cannot meet this burden.

In support of their claim of custom, the only evidence asserted by Plaintiffs is: (1) a video taken during the incident that shows Davis being stepped on by Officer Mercurio during and after being handcuffed by him; (2) deposition testimony from Officer Mercurio stating that it is proper handcuffing procedure to put a knee on the back of a suspect when the suspect has failed to comply with an order to assume a prone position; (3) deposition testimony from Officer Mercurio admitting that he stepped on Davis after handcuffing him because Davis had rolled to his side and Mercurio was attempting to maintain control of him; (4) deposition testimony from Officer Dean stating that it is common for an officer to put his knee in a suspect's neck or back if they are moving around during handcuffing; (5) deposition testimony from both officers stating that kneeing a suspect in the course of arrest is not considered a use of force; and (6) a BPR investigative report concerning Officer Dean's being reprimanded for failing to report a use of force

during an arrest when he used his knee to hold down a suspect.  Based on these

facts, Plaintiffs argues that kneeing a suspect in the back during arrest is

widespread, unnecessary, and contrary to the written policy on the use of force as

issued in the Police Board's General Orders.[2]

Plaintiffs' argument has multiple flaws.  First, the testimony of two officers,

the factual allegations surrounding one arrest incident, and one factually-similar

BPR investigation is not adequate to demonstrate a "continuing, widespread,

persistent pattern."  See Mettler v. Whitledge, 165 F.3d 1197, 1204-05 (8th Cir.

1999) (evidence of citizen complaints, where only two of the fifteen were factually

---

[2]  St. Louis County Police Department's policy regarding the use of force, General Order
04-29, states in part:

II.     POLICY
        ...
        B.      While the use of reasonable physical force may be necessary in situations which
cannot be otherwise controlled, force may not be resorted to unless other reasonable alternatives
have been exhausted or would likely be ineffective under a particular set of circumstances.
Therefore, it is the policy of this Department that officers shall use only that force that appears
reasonably necessary to effectively bring an incident under control, while protecting the lives and
safety of the officer or another.  Verbal or physical abuse is forbidden.
        ...
VI.     USE OF NONDEADLY FORCE - REGULATIONS
        A.      Where deadly force is not authorized, officers should assess the incident in
        order to determine which nondeadly technique or less lethal weapon will best de-
        escalate the incident and bring it under control in a safe manner.  Only the
        appropriate amount of force necessary to bring an incident under control is
        authorized.  In making an arrest, no more force shall be used than is reasonably
        necessary for the safe custody of the prisoner or for overcoming any resistance
        that may be offered and for ensuring the delivery of the prisoner into safekeeping.
        Officers are not authorized to use chokeholds, neck restraints, shoulder pins or
        similar weaponless control techniques with a potential for serious injury.

similar and only one of those two was sustained in part, was not sufficient to prove a pattern of unconstitutional conduct). "[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom of permitting or encouraging excessive force." Id. at 1205.

Second, Plaintiffs have not proven sufficient facts to raise an issue as to whether the act of kneeing a suspect during arrest invariably qualifies as unconstitutional conduct, as required for a section 1983 violation. Although kneeing a suspect in the back may qualify on its face as a use of force, there are situations in which police officers are justified in their use of force for the safety and well-being of themselves and the community.

Third, even if we are to assume that the act of kneeing suspects in the process of handcuffing them always constitutes unconstitutional misconduct, Plaintiffs have presented absolutely no evidence from which the Court could deduce that St. Louis County policymakers received notice of such conduct and have been deliberately indifferent to it, or have tacitly authorized it. In their second amended complaint, Plaintiffs make no allegations regarding the supposedly widespread custom of kneeing in the back during arrest. It is only in their response in opposition to summary judgment that they raise the argument and even there, they provide no evidence of notice or tacit authorization. Because no

genuine dispute as to material fact exists as to this first theory of municipal

liability against St. Louis County, it does not withstand summary judgment.

### C.  Theory 2:  Failure to Properly Train, Supervise, and Control

As a second, alternative basis for municipal liability against the County,

Plaintiffs assert that the County failed to properly hire, train, supervise, control,

and discipline Officers Dean and Mercurio, and that this failure constitutes

deliberate indifference to the rights of others.  In order to establish a case for §

1983 municipal liability for deficient hiring and training of police officers,

Plaintiffs must show:

> (1) the County's hiring and training practices are inadequate;
>
> (2) the County was deliberately indifferent to the rights of others in adopting the practices, such that the "failure to train reflects a deliberate or conscious choice by a municipality;" and
>
> (3) an alleged deficiency in the County's hiring or training procedures actually caused the Plaintiffs' injuries.

Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996) (quoting City of Canton v.

Harris, 489 U.S. 378, 389 (1989)).

In an attempt to show inadequate training, supervision, control, and

discipline policies, Plaintiffs simply offer the deposition testimony of Officer

Dean as follows:

Q.     Is there what's called – In some of the police procedure manuals I've seen this term, the proper handcuffing technique.  Is there such a thing?

A.     Not really.  I mean they try to teach you that at the academy, but on the street – You know, that's only if somebody is being very compliant with you.
        And it's like usually they don't have you – They don't teach you where you're trying to handcuff multiple suspects and it's a multiple threat.  So you're just basically trying to get the handcuffs on them, get them down, get them to quit moving, get the person handcuffed.

Q.     What is it that they teach you in the academy that's supposed to be the proper handcuffing technique?

A.     You tell them to bend over at the waist and they put their arms back, and you come up.  You know, but that's basically mainly on car stops, though.

(Dean Deposition at 22:17 - 23:11).  Plaintiffs assert that these statements by

Officer Dean exhibit that the County's policies are inadequate.

Although Dean's statement might be viewed as showing a weakness in St.

Louis County's Police Academy training program, this alone is not enough to

establish the inadequacy of the County's training policies, because it is simply his

recollection of what he was taught.  Kenneth Gregory, Captain of the St. Louis

County Police Department, states by affidavit that the Police Academy trains

officers on applying handcuffs to suspects, including training on handling

situations where multiple suspects must be handcuffed.  When questioning the

adequacy of police training under § 1983 municipal liability, "the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [municipality], for the officer's shortcomings may have resulted from factors other than a faulty training program." Canton, 489 U.S. at 390 (citations omitted). Officer Dean may have forgotten the portion of his training on handcuffing multiple suspects, or perhaps he did not pay attention during that part of the training. That he might be a bad student is not a sufficient reason to impose liability on his employer for failure to train him.

Plaintiffs have pointed to no evidence that could establish that the County was deliberately indifferent to the rights of others in adopting their training policies. To establish deliberate indifference in this context, Plaintiffs must prove that the County "had notice that its procedures were inadequate and likely to result in a violation of constitutional rights." Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (quoting Thelma D. by Dolores A. v. Board of Educ., 934 F.2d 929, 934 (8th Cir. 1991)). In addition, municipal liability under § 1983 only attaches when policymakers make a deliberate choice between multiple options to follow a certain course of action. Canton, 489 U.S. at 388. The BPR investigations

submitted by Plaintiffs, which evaluate prior complaints against the defendant officers, do not relate to factually- similar incidents of handcuffing multiple suspects. Additionally, almost all of the complaints were found to be unfounded or not sustained. Plaintiffs have presented no evidence of a deliberate choice by the County policymakers not to train police officers on handcuffing multiple suspects. There is no evidence that the County was on notice of this alleged inadequacy in the current training policies.

Finally, Plaintiffs have not established that the alleged deficiency in training actually caused their injuries. Although Plaintiffs only bring claims against Officers Dean and Mercurio, there were at least two other officers at the scene of the incident when Plaintiffs were being handcuffed. Given that the number of police officers exceeded the number of suspects handcuffed, I cannot assume that training on handcuffing multiple suspects would have prevented Plaintiffs' injuries. After all, each Plaintiff was handcuffed by a different defendant officer so the incident did not require handcuffing of multiple suspects by one officer.

Plaintiffs have failed to present sufficient evidence to support a claim under § 1983 for municipal liability based on a theory of failure to properly hire, train, supervise, control, and discipline Officers Dean and Mercurio.

## D. Theory 3: Pattern of Transgressions

As a third basis for municipal liability, Plaintiffs assert that the County knew or should have known that the acts of Mercurio and Dean were part of a pattern of transgressions, and that the County failed to investigate and act on prior complaints. As with Plaintiffs' first claim for municipal liability, the County is only liable under this theory of § 1983 liability if it had a policy or custom of failing to act upon prior similar complaints of unconstitutional conduct. Andrews, 98 F.3d at 1074-75. To prove such a custom, Plaintiffs must show a widespread and persistent pattern of unconstitutional conduct, that County officials had knowledge of prior incidents of misconduct, and that County officials deliberately failed to take remedial action. Id. at 1075.

In support of this claim Plaintiffs submit the BPR investigative reports of seven prior complaints. One of the complaints pertains to Officer Mercurio and the six others to Officer Dean. After an investigation into the allegations, most of the complaints were determined to be "unfounded," "not sustained," or "exonerated." A complaint against Dean for use of offensive language was sustained and resulted in a one day suspension without pay. A second complaint against Dean for failure to notify his watch commander of a use of force was also sustained and resulted in three days suspension without pay. Out of the seven

complaints, only these two were found to have any merit, and neither of them were factually similar to the excessive force allegations of Plaintiffs' complaint.

Plaintiffs also submit eighteen "Use of Force" reports involving Officers Dean and Mercurio. These reports are filed by police officers when they use force in arresting someone. For all of the reports submitted, a supervisory review found that the use of force was justified under the circumstances. Neither these reports, nor the citizen complaints investigated by BPR, establish a persistent and widespread pattern of unconstitutional conduct on the part of St. Louis County police officers sufficient to allow this claim to survive summary judgment. Similar to Andrews, the facts of this case "pale in comparison to the type of prior complaints that [the Eighth Circuit has] previously held supported a verdict against a city."[3]

---

[3] In Andrews the Court pointed out the persuasive evidence from its earlier municipal liability cases: "In *Parrish v. Luckie*, 963 F.2d at 204-05, the evidence of prior complaints indicated that the offending police officer had engaged in repeated acts of violence, had been charged with child abuse, and had repeatedly requested sexual favors, including oral sex, from convenience store clerks, all prior to the time he raped Parrish; furthermore, there was evidence that the police department had a policy of investigating only written complaints and that the department discouraged citizens from filing written complaints of physical or sexual assault by officers. In *Harris v. City of Pagedale*, 821 F.2d at 501-03, the evidence of prior complaints was that the offending officer had fondled a young woman in a dark room at the police station, made deals with another woman (several times) that he would not charge her if she cooperated by going to a hotel room with him or allowing him to tie her up and photograph her nude, and offered to let a woman go free from drug charges in exchange for sex, to which she consented for fear of her life; there also had been complaints of violence and sexual assault by other police officers." 98 F.3d at 1076.

Plaintiffs allege that the BPR investigations into police officer complaints were faulty because if an officer denies a complaint of use of excessive force, the complaint is always determined to be "unfounded" or "not sustained." Plaintiffs assert that if the County was really taking complaints seriously it would require officers to undergo polygraph examinations. Although Plaintiffs allege that the BPR investigations into complaints are a "farce," they have provided no evidence to support such a contention. Indeed, on two occasions complaints against Dean were sustained and disciplinary action was taken. In general, the fact that the County conducts an investigation into each complaint demonstrates that it has not failed to act in response to such complaints.

Plaintiffs have failed to show a policy or custom of failing to act by the County. The evidence is insufficient to establish a persistent and widespread pattern of unconstitutional conduct or a deliberate failure by the County to take action.

## III.   Conclusion

Plaintiffs have not presented sufficient facts to create a genuine issue of material fact as to any of the three theories for municipal liability under § 1983 that they have asserted against St. Louis County. Their evidence is not sufficient to create a genuine dispute of fact regarding whether the County has a custom or

usage of kneeing suspects while handcuffing, or of failing to act on prior complaints of excessive force.  In addition, there is no evidence to support a conclusion that the County has been deliberately indifferent to the rights of others in its adoption of polices related to the hiring, training, supervision, control, and discipline of its police officers.  Because Plaintiffs' have not established a dispute of material fact as to the County's liability, the County's summary judgment motion will be granted and Count II of Plaintiffs' complaint will be dismissed.

The claims against defendants Mercurio and Dean remain set for trial on the two-week docket beginning August 27, 2007.  As I recently informed counsel, I expect it to be reached for trial on either August 29, 2007 or September 4, 2007. The exact trial date will be announced at the pretrial hearing set for August 23, 2007, if not before that.

Accordingly,

**IT IS HEREBY ORDERED** that defendant St. Louis County's motion for summary judgment [#61] is granted and Count II of Plaintiffs' complaint is dismissed.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of July, 2007.